IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SALVADOR GONZALEZ,                    No. CIV S-08-0173-MCE-CMK-P

    Plaintiff,

  vs.                                  ORDER

T. FELKER, et al.,

    Defendants.

_____/

        Plaintiff, a state prisoner proceeding pro se, brings this civil action pursuant to 42 U.S.C. § 1983. Pending before the court is plaintiff's second amended complaint (Doc. 14).

        The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1), (2). Moreover, the Federal Rules of Civil Procedure require that complaints contain a ". . . short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This means that claims must be stated simply, concisely, and directly. See McHenry v. Renne,

1

1 84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)).  These rules are satisfied

2 if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon

3 which it rests.  See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996).  Because plaintiff must

4 allege with at least some degree of particularity overt acts by specific defendants which support

5 the claims, vague and conclusory allegations fail to satisfy this standard.  Additionally, it is

6 impossible for the court to conduct the screening required by law when the allegations are vague

7 and conclusory.

## I. PLAINTIFF'S ALLEGATIONS

In the second amended complaint, plaintiff names the following as defendants: Felker, Foulk, Peery, Lockard, Lemon, Lynn, Bracket, Sears, Garbutt, Rodriguez, Sweeten, Freitas, Anderson, Camire, Moore, Tampien, Ruggero, Epperson, Turner, Zinn, Miller, Doosenberry, Carter, Nelson, Silva, French, Celis, Baron, and Ingwerson.[1]

Plaintiff states that, on January 16, 2007, the following occurred:

> . . .[P]rison guards arrived in an aggressive, hostile, and in a threatening manner, angry in an act of force to cell extract us for no reason.  We were falsly [sic] accused of having our (my celly and I) windows covered while seeing they were not and which they video of the incident shows they falsly [sic] accused us of covering our windows.

Plaintiff alleges that prison guards "targeted the Hispanic race because they were all complaining about lockdowns. . . ."  He claims that it was the prison guards who covered the cell windows "through the outside" so that "no one would witness their planned, malicious abuse."  Plaintiff asserts that all this was done "under the supervision of acting warden T. Felker, Cptn. Foulk – authorized & supervised the cell extractions along with Lt. Peery, Sgt. Lockard, Sgt. Lynn, Sgt.

---

[1] Plaintiff adds as defendants Carter, Nelson, Silva, French, Celis, Baron, and Ingwerson.  The Clerk of the Court will be directed to update the docket to add these individuals as defendants.  The Clerk of the Court was previously directed to add Miller and Doosenberry to the docket (see Doc. 11, p. 2, fn. 1) but has not done so.  The Clerk of the Court will again be directed to add these defendants to the docket.

1  Lemon pressed the issue for us to be cell extracted." He says the cell extraction was "first made
2  by the 3 sergeants," presumably referring to defendants Lockard, Lynn, and Lemon.
3        Plaintiff asserts that, because prison officials "came angry and in a disrespectful
4  manner, armed with weapons" he feared for his safety and "felt safe in my cell." He states that it
5  was noisy outside the cell and he thinks he was ordered to turn on the light in his cell, but he is
6  not sure. He then alleges:
7        . . . Sgt. Lemon threw a gas grenade in our cell knowing I have asthma & that the vents of every inmate's cell were turned off for about 6
8        hours. . . .
9  He states that, as a result of the gas grenade, both he and his cellmate almost passed out and
10 needed help. He claims that he informed officials that he could not breath but that defendants
11 Lockard, Lynn, and Lemon "just ignored me & stared."
12       According to plaintiff, he was then forced to "go through the naked cell search
13 procedure twice for no reason, but to keep us in the cell suffering the effects longer." After being
14 removed from the cell, plaintiff states that he was placed in mechanical restraints and forced to
15 remain naked. Plaintiff asserts that he was put in restraints by defendants Tampien and Ruggero
16 after defendant Doosenberry opened the cell door from the guard tower. According to plaintiff,
17 the entire incident was filmed by defendant Epperson, who is female. He also states that, during
18 the cell extraction, defendant Camire "held a shield" and defendant Moore "had a baton." He
19 adds that "other correctional officers," whose identities he does not know, "had the opportunity
20 to stop the abuse, but did not and just watched." Plaintiff claims that, following the cell
21 extraction, defendants Zinn and Turner "took all our property. . . ."
22 / / /
23 / / /
24 / / /
25 / / /
26 / / /

## II. DISCUSSION

Based on the allegations in the first amended complaint, the court stated in its April 7, 2008, order as follows:

> The facts alleged by plaintiff appear, at best, to relate to two possible constitutional violations – a violation of the Eighth Amendment with respect to the cell extraction, and/or a violation of due process with respect to the resulting disciplinary hearing and guilty finding.

Plaintiff makes clear in his second amended complaint that he is only asserting Eighth Amendment claims relating to the cell extraction. Specifically, he states:

> As to the extent of the facts underlying the disciplinary hearing, they were added in the [first amended] complaint in support of the cell extraction complaint, not to invalidate the guilty finding.

Thus, while plaintiff alleges facts in the second amended complaint appearing to relate to possible claims of retaliation and destruction of property, plaintiff limits this action to Eighth Amendment claims arising from the cell extraction.

Regarding the cell extraction, plaintiff alleges the personal involvement of the following defendants:

- Felker, Foulk, Peery – "supervised and authorized" unjustified cell extraction.

- Lockard, Lynn, Lemon – ignored plaintiff's calls for help following exposure to the gas grenade and resulting difficulty breathing.

- Doosenberry – opened cell door.

- Tampien, Ruggero – placed plaintiff in mechanical restraints.

- Epperson – filmed cell extraction.

- Camire – held a shield.

- Moore – held a baton.

Plaintiff does not state any factual allegations regarding the personal involvement of any other named defendant with respect to the cell extraction, despite having previously been granted leave to amend to do so.

4

As to defendants Felker, Foulk, and Peery, plaintiff's allegation that they supervised and authorized an improper cell extraction is sufficient to link them to a possible Eighth Amendment violation. As to defendants Lockard, Lynn, and Lemon, plaintiff's allegation that they ignored his pleas for medical attention following exposure to the gas grenade is also sufficient to link them to a possible Eighth Amendment violation. However, as to defendants Doosenberry, Tampien, Ruggero, Epperson, Camire, and Moore, plaintiff has not alleged any facts which would support a claim under the Eighth Amendment. Specifically, he has not alleged any improper action or deliberate indifference. Moreover, as indicated above, plaintiff has not alleged facts which would link any other defendant to an Eighth Amendment violation. Thus, the second amended complaint appears to state claims against defendants Felker, Foulk, Peery, Lockard, Lynn, and Lemon, but not against any other named defendant. Plaintiff will be provided one more opportunity to amend the complaint.

If plaintiff chooses to file a third amended complaint, he should keep the following legal principles in mind. The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth

Amendment, a prison official must have a "sufficiently culpable mind."  See id.

When prison officials stand accused of using excessive force, the core judicial inquiry is ". . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992); Whitley v. Albers, 475 U.S. 312, 320-21 (1986).  The "malicious and sadistic" standard, as opposed to the "deliberate indifference" standard applicable to most Eighth Amendment claims, is applied to excessive force claims because prison officials generally do not have time to reflect on their actions in the face of risk of injury to inmates or prison employees.  See Whitley, 475 U.S. at 320-21.  In determining whether force was excessive, the court considers the following factors: (1) the need for application of force; (2) the extent of injuries; (3) the relationship between the need for force and the amount of force used; (4) the nature of the threat reasonably perceived by prison officers; and (5) efforts made to temper the severity of a forceful response. See Hudson, 503 U.S. at 7.  The absence of an emergency situation is probative of whether force was applied maliciously or sadistically.  See Jordan v. Gardner, 986 F.2d 1521, 1528 (9th Cir. 1993) (en banc).  The lack of injuries is also probative.  See Hudson, 503 U.S. at 7-9.  Finally, because the use of force relates to the prison's legitimate penological interest in maintaining security and order, the court must be deferential to the conduct of prison officials.  See Whitley, 475 U.S. at 321-22.

Deliberate indifference to a prisoner's serious illness or injury, or risks of serious injury or illness, gives rise to a claim under the Eighth Amendment.  See Estelle, 429 U.S. at 105; see also Farmer, 511 U.S. at 837.  This applies to physical as well as dental and mental health needs.  See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982).  An injury or illness is sufficiently serious if the failure to treat a prisoner's condition could result in further significant injury or the ". . . unnecessary and wanton infliction of pain." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994). Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition

is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily activities; and (3) whether the condition is chronic and accompanied by substantial pain. See Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

The requirement of deliberate indifference is less stringent in medical needs cases than in other Eighth Amendment contexts because the responsibility to provide inmates with medical care does not generally conflict with competing penological concerns. See McGuckin, 974 F.2d at 1060. Thus, deference need not be given to the judgment of prison officials as to decisions concerning medical needs. See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989). The complete denial of medical attention may constitute deliberate indifference. See Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986). Delay in providing medical treatment, or interference with medical treatment, may also constitute deliberate indifference. See Lopez, 203 F.3d at 1131. Where delay is alleged, however, the prisoner must also demonstrate that the delay led to further injury. See McGuckin, 974 F.2d at 1060.

Negligence in diagnosing or treating a medical condition does not, however, give rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 106. Moreover, a difference of opinion between the prisoner and medical providers concerning the appropriate course of treatment does not give rise to an Eighth Amendment claim. See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

Finally, to state a claim under 42 U.S.C. § 1983, the plaintiff must allege an actual connection or link between the actions of the named defendants and the alleged deprivations. See Monell v. Dep't of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations

are not sufficient.  See <u>Ivey v. Board of Regents</u>, 673 F.2d 266, 268 (9th Cir. 1982).  Rather, the plaintiff must set forth specific facts as to each individual defendant's causal role in the alleged constitutional deprivation.  See <u>Leer v. Murphy</u>, 844 F.2d 628, 634 (9th Cir. 1988).

### III.  CONCLUSION

Because it is possible that the deficiencies identified in this order may be cured by amending the complaint, plaintiff is entitled to leave to amend.  See <u>Lopez v. Smith</u>, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc).  Plaintiff is informed that, as a general rule, an amended complaint supersedes the original complaint.  See <u>Ferdik v. Bonzelet</u>, 963 F.2d 1258, 1262 (9th Cir. 1992).  Therefore, if plaintiff amends the complaint, the court cannot refer to the prior pleading in order to make plaintiff's amended complaint complete.  See Local Rule 15-220.  An amended complaint must be complete without reference to any prior pleading.  See <u>id.</u>

If plaintiff chooses to amend the complaint, plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of plaintiff's constitutional rights.  See <u>Ellis v. Cassidy</u>, 625 F.2d 227 (9th Cir. 1980).  The complaint must allege in specific terms how each named defendant is involved, and must set forth some affirmative link or connection between each defendant's actions and the claimed deprivation.  See <u>May v. Enomoto</u>, 633 F.2d 164, 167 (9th Cir. 1980); <u>Johnson v. Duffy</u>, 588 F.2d 740, 743 (9th Cir. 1978).

Because the complaint appears to otherwise state cognizable claims, if no amended complaint is filed within the time allowed therefor, the court will issue findings and recommendations that the claims identified herein as defective be dismissed, as well as such further orders as are necessary for service of process as to the cognizable claims.

/ / /

/ / /

/ / /

/ / /

Accordingly, IT IS HEREBY ORDERED that:

1. The Clerk of the Court is directed to update the docket to add the following individuals as defendants: Carter, Nelson, Silva, French, Celis, Baron, Ingwerson, Miller, and Doosenberry; and

2. Plaintiff may file a third amended complaint within 30 days of the date of service of this order.

DATED: September 15, 2008

    _____
    **CRAIG M. KELLISON**
    UNITED STATES MAGISTRATE JUDGE