IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SALVADOR GONZALEZ, | No. CIV S-08-0173-MCE-CMK-P |
| Plaintiff, | |
| vs. | FINDINGS AND RECOMMENDATIONS |
| FELKER, et al., | |
| Defendants. | |
| _____/ | |

      Plaintiff, a state prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983.  Pending before the court is plaintiff's third amended complaint (Doc. 18).

      The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  See 28 U.S.C. § 1915A(a).  The court must dismiss a complaint or portion thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915A(b)(1), (2).  Moreover, the Federal Rules of Civil Procedure require that complaints contain a ". . . short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  This means that claims must be stated simply, concisely, and directly.  See McHenry v. Renne,

1


84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)).  These rules are satisfied if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.  See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996).  Because plaintiff must allege with at least some degree of particularity overt acts by specific defendants which support the claims, vague and conclusory allegations fail to satisfy this standard.  Additionally, it is impossible for the court to conduct the screening required by law when the allegations are vague and conclusory.

## I. PLAINTIFF'S ALLEGATIONS

Plaintiff names the following as defendants:  Felker, Foulk, Peery, Lockard, Lemon, Lynn, Doosenberry, Tampien, Epperson, Camire, Ruggero, Moore, French, Miller, and Ingwerson.[1]  He states that, on January 16, 2007, correctional officer Sears came to his cell block to escort a prisoner in a neighboring cell to a medical appointment.  According to plaintiff, at that time defendant Sears inquired as to "why were the Southerners, Northerners, Whites, and Blacks covering their cell windows."  Plaintiff said he didn't know what Sears was talking about.  Plaintiff states that, about an hour later, Sears returned, this time with correctional officer Campbell.  At that time, Sears told plaintiff:  "I guess everyone is mad 'cause of the lockdowns, but they came to an agreement with the Southern Mexicans."

Plaintiff states that, later, he spoke with correctional officer Campbell who said that the guards were upset about the windows being covered earlier and that they wanted to "cell extract" a "Mexican national."  He adds that correctional officer Campbell then covered every cell window from the outside and, after that, the electricity and ventilation were turned off.

---

[1]  The following defendants were named in the second amended complaint but specifically omitted from the list of defendants outlined in the third amended complaint: Bracket, Sears, Garbutt, Rodriguez, Sweeten, Freitas, Anderson, Turner, Zinn, Carter, Nelson, Silva, Celis, and Baron.  By separate order, the Clerk of the Court will be directed to terminate these individuals as defendants to this action.

Following this, plaintiff heard "yelling and banging" and he smelled "some type of chemical." Plaintiff states that he has asthma and was having a hard time breathing.

Plaintiff alleges that, several hours later, prison guards arrived in an "aggressive manner" to "cell extracts us for no reason." He states that he was falsely accused of covering his cell window. He claims that the guards were angry and disrespectful and that he feared for his safety. Plaintiff says that "[t]his was done under then acting warden Felker, who is legally responsible for the operations" at the prison. Plaintiff states that defendants Foulk, Peery, Lynn, Lemon, and Lockard "authorized and supervised the cell extraction."

When the guards came to his cell door to extract him, plaintiff states he felt safer in his cell. He was ordered by defendant Lockard to "turn on my bright lights" and that he complied. He states that, due to noise, he was unable to hear what was being said next, but he assumed he was being ordered to submit to mechanical restraints. Plaintiff alleges that he told the guards that he has asthma, his ankle was sprained, and that he could not hear their orders over the noise. According to plaintiff, "[a]ll of a sudden Sgt. Lemon throws some type of gas grenade in my cell." He states he felt like he was suffocating. He states that when he asked for help, defendants Peery, Lemon, Lockard, and Lynn "all just stared at me as did the rest of the guards." Plaintiff claims he was "forced to go through the naked cell search procedure twice for no reason, but to keep me suffering the effects of the gas longer." He was then "paraded" in front of 50-100 guards and staff, some of whom were female, who were watching and laughing.

According to plaintiff, after being led out of the cell, he was forced to remain naked and in mechanical restraints. Plaintiff states that, during the cell extraction, defendant Camire held a shield, Sears and defendant Moore held a baton, defendant Tampien held handcuffs, defendant Ruggero held leg irons, and defendant Epperson filmed the incident. He alleges that defendant "Doosenberry knew exactly what was going on and let the abuse proceed by opening the cell door from the tower." Plaintiff claims that defendants French and Miller "gave the clearance for me to be gassed and cell extracted, knowing I had asthma and could not

3

1  be cell extracted in that manner."

2      Plaintiff states that he was then taken to the showers and asked by a nurse if he
3  was okay, to which he responded that he was.  However, plaintiff states that he only said he was
4  okay "due to the shock of what had just happened."  According to plaintiff, after returning to his
5  cell from the showers, he was still naked and all his property had been taken by correctional
6  officers Zinn and Turner.  He states that he did not have access to clothing or hygiene items for
7  the next 24 hours.   When clothing was provided, he was only given socks, a shirt, and boxer
8  shorts.  Plaintiff states that his required medication, including inhalers, was not returned.  He also
9  states that his legal property was not returned and that, despite a sprained ankle, he was not
10 provided any bandages.  He states that his property was withheld for 52 days "as a reprisal for
11 filing administrative appeals."

12     As to plaintiff's administrative grievance, he states that defendant Lockard "pulled
13 me out to his office for a so-called interview."  According to plaintiff, defendants Lemon and
14 Lynn were at this meeting and that defendant Lockard told plaintiff  "in a disrespectful and
15 threatening manner"  to drop his inmate grievance or  "he would make sure that everyone's
16 property gets 'lost' and no one would receive their property, and that he would place me on their
17 black list."  Plaintiff states that the other officers present also demanded that he abandon his
18 administrative grievance.  Plaintiff claims that, rather than signing or responding to the
19 grievance, defendant Lockard crumpled it up, threw it at him, then stuffed it in his shirt pocket.
20 Plaintiff states that his grievance was ultimately denied due to a "code of silence."

21     Plaintiff alleges that he was falsely accused of participating in a mass disturbance
22 and issued a rules violation based on this charge.  Without referencing any specific named
23 defendants, plaintiff outlines a number of alleged procedural violations with respect to this rules
24 violation charge and subsequent disciplinary proceeding.

25 / / /

26 / / /

## II. DISCUSSION

The court previously concluded that plaintiff's second amended complaint appeared to state cognizable claims against defendants Felker, Foul, Peery, Lockard, Lynn, and Lemon. Specifically, the court stated:

> As to defendants Felker, Foulk, and Peery, plaintiff's allegation that they supervised and authorized an improper cell extraction is sufficient to link them to a possible Eighth Amendment violation. As to defendants Lockard, Lynn, and Lemon, plaintiff's allegation that they ignored his pleas for medical attention following exposure to the gas grenade is also sufficient to link them to a possible Eighth Amendment violation. . . .

As to defendants Doosenberry, Tamipen, Rugerro, Epperson, Camire, and Moore, the court stated:

> . . . [P]laintiff has not alleged any facts which would support a claim under the Eighth Amendment. Specifically, he has not alleged any improper action or deliberate indifference.

Plaintiff's second amended complaint did not contain any specific allegations as to defendants French, Miller, or Ingwerson (or any other defendants named at that time).

The allegations outlined in the third amended complaint as to defendants Felker, Foulk, Peery, Lockard, Lynn, and Lemon are substantially the same as those set forth in the second amended complaint. The court finds, therefore, that plaintiff's third amended complaint appears to state claims against these defendants. He claims that defendants French and Miller "gave the clearance for me to be gassed and cell extracted, knowing I had asthma and could not be cell extracted in that manner." The court finds that this allegation also appears to state a claim. By separate order, the court will require plaintiff to submit documents required for service on these defendants by the United States Marshall.

///
///
///
///

As to defendants Doosenberry, Tamipen, Rugerro, Epperson, Camire, and Moore, plaintiff's third amended complaint outlines the following conduct:

- Doosenberry – opened cell door.
- Tampien, Rugerro – placed plaintiff in mechanical restraints.
- Epperson – filmed cell extraction.
- Camire – held a shield.
- Moore – held a baton.

These allegations are the same as in the second amended complaint and, for the reasons outlined in the prior order, are still defective. Plaintiff also claims that all defendants – including these defendants – then "paraded" him naked in front of other correctional officers and staff, some of whom were female. The court still cannot find any allegations mentioning defendant Ingwerson.

It appears that plaintiff is either unable or unwilling to allege facts which would state a claim against defendants Doosenberry, Tamipen, Rugerro, Epperson, Camire, and Moore. His allegations against these defendants are the same as those set forth in the second amended complaint and, for the reasons outlined in the prior order, are still defective. Similarly, plaintiff still has not outlined any facts relating to defendant Ingwerson. This action has been pending now for over a year and it is time for it to proceed as against those defendants plaintiff appears to state cognizable claims. The court will recommend dismissal of the remaining defendants.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

### III.  CONCLUSION

Because it does not appear possible that the deficiencies identified herein can be cured by further amending the complaint, plaintiff is not entitled to leave to amend prior to dismissal of defendants Doosenberry, Tamipen, Rugerro, Epperson, Camire, Moore, and Ingwerson.  See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc).

Based on the foregoing, the undersigned recommends that Doosenberry, Tamipen, Rugerro, Epperson, Camire, Moore, and Ingwerson be dismissed and that the Clerk of the Court be directed to terminate these individuals as defendants to the action.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 20 days after being served with these findings and recommendations, any party may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  February 17, 2009

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE